Taft v. McCullock.

TAFT, *Appellant*, v. McCULLOCK.

### Division One, November 11, 1896.

1. **Taxation**: ASSESSOR'S BOOK, AUTHENTICATION OF: STATUTE. The fact that the copy of the assessor's book furnished to the collector by the clerk of the county court under the revenue law of 1872 (2 Wag. Stats., ch. 118, sec. 65), was not authenticated by the seal of the county court, does not affect the validity of the taxes, nor defeat the right of the purchaser at the tax sale to recover the sum paid from the owner with interest and penalties.

2. ———: ———: AFFIDAVIT. An affidavit to the land assessor's book *held*, sufficient, though it fails to state in express terms of what county affiant was assessor or that he was assessor.

3. ———: PURCHASER AT TAX SALE: LIMITATION. The statute of limitations begins to run under the revenue law of 1872 (2 Wag. Stat., ch. 118, sec. 216) against an action on a tax deed from the date of the deed and not from the time at which it could have been demanded of the collector by the purchaser.

*Appeal from Gentry Circuit Court.*—HON. C. A. ANTHONY, Judge.

REVERSED AND REMANDED.

*McCullough & Peery* for appellant.

(1) This suit having been begun within ten years from the date of the tax deed, is not barred by the ten years statute of limitations. *Pitkin v. Reibel*, 104 Mo. 505; *Pitkin v. Shacklett*, 106 Mo. 571. (2) The purchaser under the tax deed, in case it was not sustained, has, under the statute, the right to recover the full sum paid by him on the land at the tax sale. Wag. Stat., p. 1207. The owner of the property can not rightfully complain if he is thus required to discharge his share of the public burden, though the sale be invalid. *White v. Shell*, 84 Mo. 569; *Pitkin v. Reibel*, 104 Mo. 510.

(3) Again it has been said: "The purchaser at the tax sale, void though it was, acquired a broad equity, an equity as broad as the general statutory provisions under which he purchased." *Bingham v. Birmingham,* 103 Mo. 345. To the same effect are other cases. *Pitkin v. Shacklett,* 106 Mo. 571; *Allen v. Buckley,* 94 Mo. 158; *Gregg v. Jesberry,* 113 Mo. 34. (4) The tax book in this case establishes a legal assessment. *State ex rel. v. Hurt,* 113 Mo. 90; *Thomas v. Chapin,* 116 Mo. 396; *State ex rel. v. Bank,* 120 Mo. 161; *State ex rel. v. Lounsberry,* 125 Mo. 157. So, too, say the following text writers. Welty on Assessments, secs. 232, 236. Cooley on Tax. [2 Ed.], 283, 284, 297, 308.

*Patton & Shoemaker* for respondent.

(1) The "Land List Assessment Book" for the year 1875, introduced by plaintiff to show a legal assessment, is insufficient for that purpose, because defective and wholly wanting in three essential particulars. *First.* It fails to show the valuation of the land as equalized and assessed by the state board of equalization, as required by Act of 1872, section 66. It is against this valuation that the taxes are to be extended. *Ibid.* The valuation by the state board is one of the provisions designed to secure equality of taxation. Such provisions are mandatory. Cooley on Taxation [1 Ed.], p. 217. Equalization of valuation as between counties or townships, required by the statute to be made by boards of equalization, is as important as is a separate valuation of property as between individuals, and failure to comply with such requirements invalidates the tax. *Yelverton v. Steele,* 36 Mich. 62; *Boyce v. Sebring,* 66 Mich. 210; *Auditor General v. Roberts,* 83 Mich. 471. And such action must appear from the record. *Yelverton v. Steele,* 36 Mich. 62; *Boyce v. Sebring,* 66 Mich.

210; *Moser v. White*, 29 Mich. 59; *Williams v. Mears*, 61 Mich. 86. *Second.* No taxes whatever were extended on this book, as required by said section 66. This book when completed by the county clerk, by extending the taxes thereon, becomes the original tax book to be kept and retained in the clerk's office as the official record of the proceedings, and a copy thereof furnished to the collector as his warrant for the collection of the taxes, which have been extended upon and are shown by the original book. The extension of the taxes on such book is an essential and jurisdictional requirement, and is mandatory. *State ex rel. v. Phillips*, 102 Mo. 664; *Seymour v. Peters*, 67 Wis. 415; *Lockwood v. Roys*, 40 Pac. Rep. (Wash.) 346. *State ex rel. v. Lounsberry*, 125 Mo. 157, relied on by appellant on this point, arises under the present statute in a suit for taxes by the collector, and in that case there appears to have been a properly authenticated copy delivered to the collector, while here there is no legal official tax book, from which the amount of taxes could be ascertained. *Third.* Such assessment book is not certified in the manner required by law in this, that E. B. Crissey who signs the certificate is not stated therein to be the assessor of Gentry county, does not sign it as assessor, and the seal of the county court is not attached. These defects could not be supplied by parol. *State ex rel. v. Phillips*, 102 Mo. 667; *Howard v. Heck*, 88 Mo. 456. (2) Plaintiff's right to recover is barred by the statute of limitations. This action was commenced January 29, 1881, more than ten years after the expiration of the time for redemption (Feb. 10, 1879), at which time he was entitled to a deed and the statute began to run against him and in favor of the adverse occupant. The statute runs from the time it is within the power of the plaintiff by his own act to perfect his right of action, in spite of the opposite party, and he

can not by his neglect to do so, extend the period of the running of the statute. *Palmer v. Palmer*, 36 Mich. 487; *Ball v. Railroad*, 62 Iowa, 751; *Baker v. Johnson Co.*, 33 Iowa, 151; *Presscott v. Gonser*, 34 Iowa, 175; *Hintrager v. Hennessy*, 46 Iowa, 600; *Bradley v. Cole*, 67 Iowa, 650, and notes; *Hintrager v. Trout*, 69 Iowa, 746; *Larue v. King*, 74 Iowa, 288; *Innes v. Drexel*, 43 N. W. Rep. 201; *De Gex v. Sheldon*, 27 Neb. 829.

MACFARLANE, J.—This is a suit in ejectment to recover possession of nineteen and sixty-seven hundredths acres of land off the east side of lot 5, northeast quarter of section 15, township 61, range 30, in Gentry county.

The petition contains two counts, the first in the form usual in ejectment suits; the second, in addition, avers that plaintiff claimed his right to possession by virtue of a tax deed executed, acknowledged and delivered by the collector of the county under a sale for the taxes of 1875. The prayer under the second count is, that, if the tax deed should be adjudged insufficient to authorize a recovery of the land, plaintiff might have judgment for the purchase money paid, with the penalty and interest thereon, and that the same should be adjudged a lien upon the land.

The answer is a general denial with a plea of the statutes of limitation.

On the trial plaintiff offered in evidence a "tax deed" purporting to convey the land to him. This deed was made by the collector of Gentry county, was dated the first day of February, 1881, was duly acknowledged, and was recorded on the second day of February, 1881. The deed recites a judgment of the county court ordering the sale of the land for the taxes of 1875; the issuance of a special execution; an offer

of the land at public sale; a failure to sell for want of bidders and a forfeiture of the land to the state. It recites further that, on the tenth day of February, 1877, plaintiff paid the collector the taxes, interest and penalties on the land, who, thereupon, gave him a certificate of purchase therefor. There is no recital that plaintiff applied to the clerk of the county court for an "order to the county collector, directing him to receive from" plaintiff "the amount due on said tract, * * * particularly describing the property and setting forth the amount due."

On objection of defendant this deed was excluded as evidence of title under the first count in the petition, but was admitted under the second count as evidence of the payment of the taxes, penalty, etc., by plaintiff.

Defendant introduced in evidence the land tax book of Gentry county for the year 1875. It does not appear that this book was authenticated, or certified by the county clerk.

Plaintiff then introduced the "Land List Assessment book of Gentry county for the year 1875." Defendant objected to this book, as evidence, on the ground that it was not properly verified by the assessor.

The affidavit of the assessor was as follows:

"STATE OF MISSOURI, } ss.
"County of Gentry. }

"January 18, 1875.

"E. B. Crissey, being duly sworn, makes oath and says that he has made diligent efforts to ascertain all the taxable property being or situate on the first day of August, 1874, in the county in which he is assessor; that so far as he has been able to ascertain it is correctly set forth in the foregoing book in the manner

and the value thereof stated therein according to the mode required by law.

"E. B. Crissey.

"Subscribed and sworn to before me, this eighteenth day of January, 1875.

"J. T. Daniel, County Clk.,

"By J. B. Thomas, Dept. Co. Clk."

Plaintiff asked and the court refused to give this instruction:

"Under the evidence in this case the plaintiff is entitled to recover, under the, second count of the petition, the amount of taxes, interest, penalty and costs paid by him at the time of the tax sale of the land in controversy, together with the interest thereon."

Other instructions were asked by plaintiff, and refused by the court, but it is unnecessary to set them out here. The general effect of them is that the failure of the assessor to verify his book by proper affidavit and the failure of the clerk to authenticate the collector's book by the seal of the court did not defeat plaintiff's right to recover.

I.  No exception is taken to the ruling of the court in excluding the tax deed as evidence of title. The only question, therefore, is, whether, under the evidence, plaintiff is entitled to recover from defendant the amount of purchase money paid the collector with interest and penalties thereon. The court denied the right upon the ground, and for the sole reason, that the tax book was not properly authenticated by the county clerk.

The proceedings, which resulted in an attempted sale, were had under the revenue law of 1872. 2 Wag. Stats., chapter 118, page 1154. Section 61 of that act requires the assessor to make out, and return to the county court, a fair copy of the assessor's book, veri-

fied by his affidavit annexed thereto. Section 65 requires the clerk of the county court to make "a fair copy thereof, with the taxes extended therein, authenticated by the seal of the court, for the use of the collector."

The tax book furnished the collector, and upon which the tax in question was extended, was not authenticated by the clerk, as the statute required. Did this omission of the clerk deprive the purchaser at the tax sale of the right to recover from the owner of the land the amount of the purchase money paid by him therefor, with penalties, and interest thereon as provided by section 219 of said act?

This remedial statute, whenever it has come before this court, has been given a broad and liberal construction so as to enforce the equities it was intended to create. Thus it will be found, by an examination of the decided cases, that relief has been granted in all cases that have come before the court in which the assessment and levy created a legal tax which the owner had neglected or refused to pay. *White v. Shell*, 84 Mo. 569; *Bingham v. Birmingham*, 103 Mo. 345; *Pitkin v. Reibel*, 104 Mo. 510.

After the tax has been imposed by a legal and regular assessment and levy, the duty of the owner of the property to pay the tax arises. In the enforcement of payment by legal proceedings, or in selling the property for its payment under statutory powers, the owner stands upon his legal rights and may demand that the requirements which affect his rights and interests shall be complied with, at least substantially. But in adjusting the equities, which this statute gives to the purchaser, the court which, by the strongest implication, is required to exercise its equity powers, can go behind mere formal and technical requirements, and ascertain if the tax, which was discharged by the pur-

chaser, was valid, and if the owner of the land had neglected to pay it, before or after the sale. When these facts are shown, the equities, which the statute declares, are complete. The purchaser pays an obligation due from the landowner to the state; the state receives and uses the money in payment of governmental expenses, and other obligations. The provisions of the statute are approved by the judicial mind as being eminently just and equitable.

The deed of the collector is made *prima facie* evidence of the proper assessment of the property and levy of the tax. In this proceeding the performance of subsequent official duties and details provided for the collection of the tax is immaterial and is to be conclusively presumed. Section 219.

It follows from what has been said that the failure of the clerk to authenticate the tax book, by the seal of the court, does not affect the validity of the tax, and does not, therefore, defeat the right of plaintiff to recover, from defendant, the amount paid in the purchase of the land with interest and penalties as provided by the statute.

II. By the affidavit annexed to the assessor's book every fact required by the statute to be verified was sworn to by E. B. Crissey, but it does not appear from the affidavit itself that the person so subscribing it was the assessor of Gentry county. It does appear from the affidavit, however, that the acts sworn to were done by him as assessor of the county, but no county is named.

The book itself was designated as the "Land Assessment Book of Gentry County, State of Missouri," and the affidavit was made in Gentry county before the county clerk thereof. These facts sufficiently show, *prima facie*, that Crissey, the affiant, was assessor of

Gentry county. The assessment appears to have been regular and sufficient.

III. The land was sold to plaintiff by the collector on the tenth day of February, 1877. The tax deed was dated February 1, and recorded February 2, 1881. This suit was commenced January 29, 1891.

After expiration of two years from date of sale, if the land was not redeemed, the collector was required, "on request and on the production of the certificate of purchase," to make to the purchaser a deed. Section 216. The purchaser then was entitled to his deed, February 10, 1879.

It will be seen that the suit was brought within ten years after the deed was recorded, but not within ten years after plaintiff was entitled to a deed and could have secured one by application to the collector. Defendant was in the adverse possession of the land from the date of the sale, to the commencement of the suit, and insists that the action is barred by limitation.

It has been held that where the right of action depends upon some act to be done by the plaintiff, he can not by failing to do such act, prevent the statute from running. So defendant insists that plaintiff was entitled to a deed at the expiration of two years after his purchase, and the cause of action then accrued; that plaintiff could not extend the period given by the statutes of limitation by voluntarily neglecting to take a deed which the law in effect tendered him. The principle finds support in several cases cited by counsel. *Hintrager v. Traut*, 69 Iowa, 746; *Palmer v. Palmer*, 36 Mich. 487.

It will be found that this principle is generally applied in cases where no definite time is fixed in which the required act must be done. In the case first cited above it is said: "Surely, a plaintiff can not indefinitely prolong the time in which he may sue by volun-

tarily failing to do the things required by law to be done before an action can be brought."

But the revenue law of 1872 requires the purchaser at tax sale to take out his deed, and have it recorded, within two years after the time for redemption shall have expired, and, failing to do so, the certificates of purchase are declared null and void. The statute thus fixes the time, within which demand for a deed shall be deemed reasonable, and the performance of that act can not be postponed indefinitely, but must be accomplished within the prescribed time.

We see no sufficient reason for departing from the rule adopted in the case of *Pitkin v. Reibel*, 104 Mo. 510, and *Pitkin v. Shacklett*, 106 Mo. 571, which hold that the statute begins to run from the date of the deed. The judgment is reversed and the cause is remanded. All concur, except ROBINSON, J., who is absent.